UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| KELLY D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1174-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Kelly D. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 21).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 18, 19. Plaintiff also filed a reply brief. *See* ECF No. 20. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 18) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 19) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on January 26, 2016,[1] alleging disability beginning December 7, 2013, (the disability onset date), due to depression, neck pain, and back pain. Transcript ("Tr.") 106, 117. The claims were denied initially on June 20, 2016, after which Plaintiff requested a hearing. Tr. 129, 145. On August 8, 2018, Administrative Law Judge Ellen Parker Bush (the "ALJ") conducted a video hearing in Lawrence, Massachusetts. Tr. 70-81. Plaintiff appeared from Jamestown, New York, but the hearing was postponed for Plaintiff to obtain representation. *Id*. Thereafter, on May 3, 2019, the ALJ held a second video hearing in Lawrence, Massachusetts. Tr. 864. Plaintiff appeared and testified from Jamestown, New York, and was represented by Phillip V. Urban, an attorney. *Id*. Edmond J. Calandra, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on July 17, 2019, finding that Plaintiff was not disabled. Tr. 864-79. On July 8, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's July 17, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

---

[1] The Court notes that there is a prior final disability determination dated December 6, 2013, finding that Plaintiff was not disabled. Tr. 85-93. In March 2015, the Appeals Court denied further review, effectively affirming the December 6, 2013 denial. Tr. 97-99. Plaintiff did not appeal that decision.

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

3

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her July 17, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The claimant has not engaged in substantial gainful activity since December 7, 2013, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post anterior cervical decompression and fusion surgery, depressive disorder, anxiety disorder, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.l567(b) and 416.967(b)[2] except: she can stand or walk up to six hours total in an

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the

eight-hour workday, sit for six hours in an eight-hour workday; can frequently climb ramps or stairs, balance, and kneel; can occasionally stoop, crouch, crawl, and occasionally overhead reach bilaterally; but can never climb ladders, ropes, or scaffolds. Additionally, she cannot work around unprotected heights. She is further limited to understanding and remembering simple instructions, can sustain attention and maintain focus long enough to complete simple tasks, can work in the vicinity of the general public, can adapt to simple routine changes to task, but cannot perform tasks involving team or tandem work; and she can adapt to simple routine changes to task.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 13, 1975 and was 38 years old, which is defined as a younger individual age 18 to 49, on the alleged disability onset date and is presently 44 years old (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 864-79.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on January 25, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 879. The ALJ also determined that based on the application for supplemental security benefits protectively filed on January 25, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

---

ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ erred by not including in the RFC all of the limitations identified by consultative examiner Michael Rosenberg, M.D. ("Dr. Rosenberg"), despite affording the opinion significant weight. *See* ECF No. 18-1 at 12-16. Next, Plaintiff argues that the ALJ erred when she failed to give good reasons for rejecting the opinion of treating orthopedic surgeon Lindsey Clark, M.D. ("Dr. Clark"). *See id*. at 16-19.

In response, the Commissioner argues that: (1) the ALJ properly considered and weighed Dr. Rosenberg's opinion, and Plaintiff did not meet her burden of proving a more restrictive RFC (*see* ECF No. 19-1 at 16-21) than found by the ALJ; and (2) the ALJ properly considered and weighed the opinion of Dr. Clark and provided good reasons for affording the opinion little weight (*see id*. at 21-26).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record and reasonably found that Plaintiff was capable of performing light work with the limitations noted. The ALJ's finding was supported by the opinions of consultative examiner Dr. Rosenberg and state agency medical consultant M. Bijpuria, M.D. ("Dr. Bijpuria"), the objective medical evidence showing relatively normal physical findings throughout the record, and Plaintiff's ability to drive and perform daily activities independently.

The Court notes that Plaintiff does not dispute the ALJ's findings as to her mental impairments (*see* ECF No. 19-1 at 12-19); thus, the Court declines to address the ALJ's mental RFC findings in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

On May 25, 2016, Plaintiff underwent a consultative examination by Dr. Rosenberg. Tr. 503. Plaintiff reported a history of back pain radiating down her right leg as well as neck pain radiating to both shoulders and both arms, which was sometimes made worse by walking, standing too long, sitting too long, and twisting, turning and bending. *Id*. Plaintiff reported that she had two injections in her back that helped her for up to two weeks. *Id*. She also reported a history of migraine headaches brought on by neck pain. *Id*. On physical examination, Plaintiff exhibited decreased range of motion in her cervical spine and pain with range of motion in the cervical spine and lumbosacral spine. Tr. 505. No abnormalities were noted in the thoracic spine. *Id*. She had full range of motion bilaterally in the shoulders, elbows, forearms, and wrists, as well as in the hips, knees, ankles; bilateral knee flexion was 110 degrees; and straight leg raise testing was negative bilaterally. *Id*.

Dr. Rosenberg opined that Plaintiff had mild restrictions for activity that involved heavy lifting and carrying secondary to mild back pain; mild-to-moderate restriction for activity that involved twisting and turning of the cervical spine secondary to her mild neck pain, as well as limited range of motion in her neck; and that Plaintiff should avoid activities that entail exposure to bright light and sound secondary to a history of migraine headaches. Tr. 506.

On February 6, 2017, Plaintiff presented to Dr. Clark at UBMD Orthopaedics & Sports Medicine for evaluation of her six-year history of cervical spine pain and bilateral upper extremity numbness and tingling. Tr. 539. Plaintiff reported she had undergone cervical epidural steroid injections, most recently in July 2016, but they had not been helpful. *Id*. Plaintiff reported constant sharp pain in the posterior region of her cervical spine with numbness and tingling bilaterally from the elbows down into her hands. *Id*. Plaintiff also reported associated weakness in her hands bilaterally. *Id*. An x-ray of Plaintiff's cervical spine taken that day revealed facet joint degeneration at C7-T1, right C7-T1 posterior spur and superior endplate, and right C5-6 neural foraminal narrowing. Tr. 544. An x-ray of Plaintiff's lumbar spine taken that day revealed facet arthropathy at L4-5/L5-S1 and degenerative disc disease at L1-2/L2-3. Tr. 543.

On November 8, 2018, Dr. Bijpuria reviewed Plaintiff's record, which included Dr. Rosenberg's examination results and opinion, and opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours total during an eight-hour workday, sit for about six hours total during an eight-hour workday, and had no limitations in pushing or pulling, other than what was opined for lifting and carrying. Tr. 656. Dr. Bijpuria also opined that Plaintiff could frequently climb ramps and stairs, balance, and kneel; occasionally stoop, crouch, and crawl, and never climb ladders, ropes, or scaffolds. Tr. 657. Dr. Bijpuria further opined that there was no established limitation for reaching in all directions, including overhead, or for handling, finger, or feeling. Tr. 658.

As noted above, Plaintiff challenges the ALJ's RFC analysis, arguing that the ALJ erred in her evaluation of the medical opinion evidence, particularly the opinions of consultative examiner Dr. Rosenberg and orthopedic surgeon Dr. Clark. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record.

*See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*,

508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed and weighed the opinion evidence under the applicable regulations.[3] Plaintiff first argues that the ALJ erred by not including in the RFC all of the limitations identified by Dr. Rosenberg, despite affording the opinion significant weight. *See* ECF No. 18-1 at 12-16. Plaintiff's argument is without merit.

After examining Plaintiff in 2016, Dr. Rosenberg determined that Plaintiff had a stable prognosis and opined that she had mild restrictions for activities that involved heavy lifting and carrying secondary to mild back pain; mild-to-moderate restrictions for activity that involved twisting and turn of the cervical spine secondary to her mild neck pain, as well as limited range of

---

[3] New regulations regarding the evaluation of medical evidence and rescission of Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-03p, took effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff's application was filed on January 26, 2016, the previous regulations are applicable to her claim.

motion of the neck; and, she should avoid activities that entail exposure to bright light and sound, secondary to a history of migraine headaches. Tr. 872, 505-06. As the ALJ reasonably noted, Dr. Rosenberg's opinion was quite general and did not specifically define the frequency with which Plaintiff could engage in those activities on a regular basis. Tr. 872. The ALJ further noted that Dr. Rosenberg was not a treating source, but he was an expert in internal medicine and had an understanding of the disability program and requirements. Tr. 872; *see* 20 C.F.R. §§ 404.1527(c)(2), (5), (6), 416.927(c)(2), (5), (6) (treating relationship, specialization, and other factors including a source's understanding of the disability programs are factors to be considered when weighing opinion evidence).

The ALJ also noted that Dr. Rosenberg's opinion did not support Plaintiff's allegations of disabling symptoms, and it was consistent with the other medical evidence of record, specifically noting the diagnostic imaging showing that Plaintiff was not significantly limited and had continued to receive conservative care after her surgery. Tr. 872; *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Mild to moderate limitations, such as the ones Dr. Rosenberg identified, have routinely been found consistent with light work. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (concluding that opinions assessing only moderate limitations supported an RFC finding for light work); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (concluding that the ALJ's RFC finding was sufficiently supported by a consultative examiner's opinion assessing only some moderate limitations); *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (rejecting an argument that moderate limitations precluded an RFC finding for light work).

Plaintiff argues that the ALJ erred in not explaining why the RFC did not include a limitation for twisting and turning her cervical spine and a limitation for being exposed to bright lights and sound despite affording Dr. Rosenberg's opinion significant weight. *See* ECF No. 18-1

at 13. Contrary to Plaintiff's assertion, however, the fact that the ALJ gave "significant" weight to Dr. Rosenberg's opinion does not mean he intended to adopt all of the limitations assessed in the opinion. As noted above, an ALJ has the purview to reject those portions of a medical opinion that are not supported by, and even contrary to, the evidence of record, while accepting those portions that are supported by the record evidence. *See Veino*, 312 F.3d at 588.

Furthermore, Plaintiff's argument ignores the fact that the ALJ afforded "great" weight to the opinion of Dr. Bijpuria, who did not identify any such limitation and thoroughly discussed the objective medical evidence supporting the RFC finding. Tr. 8700-77; *see Matos v. Comm'r of Soc. Sec.*, No. 18-CV-4701 (BMC), 2019 WL 4261767, at *1 (E.D.N.Y. Sept. 9, 2019) ("[T]he accusation of improper 'cherry-picking' . . . is a two-way street."). Moreover, the ALJ was not required to state on the record every reason justifying her decision. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal quotation marks and citations omitted); *see also Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability."); *Gladney v. Astrue*, No. 12-cv-6423P, 2014 WL 3557997, *10 (W.D.N.Y. 2014) (even where ALJ could have more fully articulated the basis for his conclusion, any such failure was harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision). Notably, Dr. Bijpuria, in reviewing Dr. Rosenberg's opinion, indicated that the opinion was non-specific, relied heavily on Plaintiff's subjective allegations, and was not supported by objective clinical findings or consistent with the longitudinal treatment records. Tr. 652, 661.

Furthermore, Plaintiff does not point to any credible evidence, nor does the record contain any evidence, to support any limitations related to the twisting/turning of her neck or being exposed to bright lights and sound. First, as it relates to twisting/turning of her cervical spine, Plaintiff reported to providers that she was able to drive and testified that she drove to the hearing, evidencing her ability to turn her neck. Tr. 28-29, 510-11. Additionally, the ALJ acknowledged throughout the decision that the record evidenced that on examination by her own providers, including Dr. Clark, Plaintiff had full range of motion of her neck. Tr. 871-76, 493-94, 519, 540, 621. In fact, Dr. Clark indicated that Plaintiff had full extension, full flexion, full left rotation, and full right rotation of her neck. Tr. 783. Dr. Clark also observed the same full range of motion of Plaintiff's neck at other visits. Tr. 553, 792.

While Plaintiff argues that a twisting/turning limitation was supported by her 2017 cervical spine surgery and Dr. Clark's opinion (*see* ECF No. 18-1 at 14), the ALJ appropriately afforded Dr. Clark's opinion little weight as it was unsupported by his own treatment notes documenting full range of motion and generally benign findings on examination. Tr. 876. Moreover, it is not the surgery, but rather, any resultant limitations that are material to evaluating disability. *See Oliver v. Comm'r of Soc. Sec.*, No. 19-CV-443-FPG, 2020 WL 3073342, at *5 (W.D.N.Y. June 10, 2020) (holding that an opinion is not automatically stale even if the claimant subsequently undergoes surgery and acknowledging the relevant question is whether the claimant has functional limitations). Here, Plaintiff was observed as having full range of motion of her neck both before and after her surgery.

In addition to Dr. Clark, Plaintiff was also observed to have full range of motion of her neck by other providers throughout the record. Tr. 519, 558, 621, 624, 727, 730, 737, 750. The ALJ also acknowledged that after her neck surgery, physical examinations remained

unremarkable. Tr. 872. For example, in September 2017, there were no signs of cervical swelling or edema and in October 2017, Plaintiff demonstrated normal movements of the cervical and lumbar spine without complaints of joint pain. Tr. 872, 625, 724. The ALJ also considered that in January 2018, Plaintiff, again, exhibited the full range of motion of the cervical spine. Tr. 873, 621. Thus, substantial evidence in the record supports the ALJ's RFC finding that did not include any twisting/turning limitations.

The record likewise does not support that Plaintiff needed to avoid bright lights and sound. Notably, Dr. Bijpuria opined that Plaintiff had no environmental limitations. Tr. 659. It is well-settled that an ALJ can rely on opinions of state agency medical consultants. *See Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019); *Camille v. Colvin*, 652 F. App' x 25, 28 (2d Cir. 2016); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). Further, Plaintiff testified that her migraines were caused by pressure in her neck, not bright lights or loud noises. Tr. 37. Plaintiff further testified they are triggered by physical activity, not lights or sound. Tr. 49. In fact, Dr. Rosenberg's opinion appears to be based on Plaintiff subjective allegation that her migraines can be exacerbated by light and sound. Tr. 503.

As the ALJ acknowledged, Plaintiff testified that she was not taking any prescription medication for her headaches and instead, for relief, stayed in a dark room and used ice packs and ibuprofen. Tr. 867, 49. Moreover, Plaintiff testified that her headaches were related to her neck injury. Tr. 49-50. Plaintiff also reported to Xiuli Li, M.D. ("Dr. Li"), at DENT Neurologic Institute, that she had some headaches due to neck pain, but she was able to relieve her headache by putting pressure on the back of her neck. Tr. 495. Thus, there is nothing in the record to support that Plaintiff's migraines were caused by light or sound, or that Plaintiff needed to avoid light and sound. Dr. Bijpuria's opinion, finding that Plaintiff had no environmental limitations, as well as

his observation that Dr. Rosenberg's opinion appeared to be based on Plaintiff's subjective complaints, coupled with the medical and nonmedical evidence noted above, provide more than substantial evidence to support the ALJ's RFC finding.

Next, contrary to Plaintiff's argument (*see* ECF No. 18-1 at 16-19), the ALJ properly considered Dr. Clark's treating source opinion and provided good reasons for affording it little weight. Tr. 876. First, treating physicians, such as Dr. Clark, are only entitled to controlling weight when the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence of record. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating source's opinion is not entitled to controlling weight when it is not consistent with the source's own treatment notes or with other substantial evidence or record or is not particularly informative. *See Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004), 362 F.2d (citing *Veino*, 312 F.3d at 588). Here, the ALJ provided good reasons for affording little weight to Dr. Clark's opinion, based on the regulatory factors at 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). *See Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (finding the ALJ provided "good reasons" for the weight assigned despite not explicitly considering all factors when assigning weight) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).

As the ALJ explained, she afforded little weight to Dr. Clark's opinion because the limitations assessed were not well supported by Dr. Clark's own treatment records and inconsistent with the record, including the opinion of Dr. Bijpuria, which the ALJ found to be more thorough and supported. Tr. 876, 856-60; *see* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4) (the more supported and consistent an opinion is with the record, the more weight will be afforded). Notably, and contrary to extreme limitations opined, Dr. Clark indicated in early 2017 that Plaintiff had full

range of motion in the neck, shoulders, wrists, and fingers. Tr. 876, 540. The ALJ also acknowledged that Dr. Clark observed Plaintiff after her surgery and reported that there was a solid interbody fusion, no evidence of loosening or breakage of the instrumentation, and cervical lordosis was maintained. Tr. 876, 827.

Dr. Clark also observed Plaintiff to be well-developed with full (5/5) muscle strength in the shoulders, wrists, and fingers and with sensation grossly intact to light touch. Tr. 876, 827. While Dr. Clark noted positive Hoffmann's sign on the left and positive Tinel's sign of the wrist bilaterally, Dr. Clark also noted normal EMG findings from September 2018. Tr. 876, 827. Thus, Dr. Clark's own treatment records do not demonstrate the limitations she opined. Moreover, the restrictive limitations identified are inconsistent with the rest of the record, including the opinion of Dr. Bijpuria, to which the ALJ reasonably afforded great weight as it was more thorough and supported by the objective evidence. Tr. 875-76; *see Diaz*, 59 F.3d at 313 n.5 ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by substantial evidence in the record.").

Contrary to Plaintiff's argument (*see* ECF No. 18-1 at18), the ALJ appropriately considered Dr. Clark's treating relationship, noting that she had treated Plaintiff since February 2017. Tr. 876. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (treating relationship considered in weighing opinion evidence). The ALJ also considered that Dr. Clark's treatment records and examinations span a long period and included treatment records both before and after Plaintiff's surgery, accounting for the length of treatment and nature and extent of the relationship. Tr. 876; *see* 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii). Plaintiff argues that the ALJ erred in not referring to Dr. Clark as her spinal surgeon or that she specialized in orthopedics; however, Plaintiff fails to acknowledge that earlier in the decision, the ALJ explicitly considered Plaintiff's

cervical surgery and cited to the surgical report authored by Dr. Clark. Tr. 872, 568-70. Moreover, the ALJ refers to Plaintiff's orthopedic treatment records in the decision, thus acknowledging Dr. Clark's specialty. Tr. 875; *see* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

In any event, even if the ALJ failed to explicitly discuss Dr. Clark's specialty as an orthopedic surgeon, the ALJ provided good reasons for affording little weight to Dr. Clark's opinion. *See Guerra*, 778 F. App'x at 77 (finding the ALJ provided "good reasons" for the weight assigned despite not explicitly considering all factors when assigning weight) (citing *Estrella*, 925 F.3d at 95); *see Camille v. Colvin*, 104 F. Supp.3d 329, 342-43 (W.D.N.Y. 2015) (finding that the ALJ did not err to explicitly discuss the treating psychiatrist's specialty where the ALJ referenced the psychiatrist in connection with his psychiatric treatment of plaintiff); *see also Jones v. Colvin*, No. 6:16CV443(CFH), 2017 WL 758511, at *5 (N.D.N.Y. Feb. 27, 2017) (finding that the ALJ's reference to records indicating the treating physician's specialty "reflects the ALJ's acknowledgment of [the physician's] apparent specialty").

Furthermore, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC

finding that was consistent with the record as a whole."). Moreover, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

Here, the ALJ properly evaluated the totality of the relevant record evidence and exercised her discretion in resolving the evidentiary conflicts in the record to reach a well-supported RFC for a restrictive range of unskilled, light work. Tr. 870. Regarding Plaintiff's physical impairments, despite Plaintiff's allegations of disabling pain and limitations, the ALJ found the RFC to be supported by the overall record, including the opinions of Dr. Rosenberg and Dr. Bijpuria, the objective medical evidence, which documented generally normal findings on examination, and Plaintiff's ability to perform basic activities of daily living independently. Tr. 870-77.

As the ALJ noted, while the record showed that Plaintiff had experienced some problems with her spine for several years, particularly her cervical spine, the objective clinical evidence and physical examination findings physical supported the RFC finding. Tr. 871. For example, in April 2015, despite Plaintiff's allegation of radiating pain to her arms and legs, on examination she demonstrated normal range of motion in both upper and lower extremities. Tr. 871, 475-76. An inspection of her back on the same date revealed normal findings, and Plaintiff denied any numbness and tingling. Tr. 871, 475-77. The ALJ acknowledged that an MRI in May 2016 revealed a broad-based disk herniation at C5-C6 disc; however, Plaintiff's gait and stance were normal, and she exhibited full range of motion of her neck. Tr. 871, 493-94, 519. In addition, an EMG in May 2016 noted no electrodiagnostic evidence of lumbar radiculopathy or generalized peripheral neuropathy. Tr. 871, 545.

Although Plaintiff continued to complain of pain in the spine and numbness in her extremities, an examination by Dr. Clark in early 2017 revealed that Plaintiff had full range of movements of the cervical spine, shoulders, wrists, and fingers. Tr. 872, 539-41, 782-84. Dr. Clark ordered an MRI of the cervical spine as well as an EMG of the bilateral upper extremities. Tr. 541, 784. The March 2017 MRI revealed disc desiccation and in April 2017, and Plaintiff subsequently underwent an anterior cervical discectomy and decompression at the C5-C6 and C6-C7 levels. Tr. 872, 568-70. At a follow-up examination in June 2017, Plaintiff reported she was doing quite well, and her left arm pain had resolved. Tr. 872, 572-74. On examination, Plaintiff appeared well developed and well nourished, she showed no signs of acute distress, and she had full strength (5/5) in all of her extremities. Tr. 573. Dr. Clark noted that her post-op wound appeared clean with no sign of infection and observed her sensation to be grossly intact to light touch. Tr. 573. As the ALJ acknowledged, physical examinations after her spine surgery remained unremarkable. Tr. 872. For example, in September 2017, there were no signs of cervical swelling or edema and Plaintiff exhibited normal lumbar movements. Tr. 872, 734.

In October 2017, Plaintiff demonstrated normal movements of the cervical and lumbar spine without complaints of joint pain. Tr. 872, 624-25. Plaintiff continued to exhibit a normal gait and posture, full strength in all extremities, and normal motor movements. Tr. 624-25. In December 2017, Plaintiff walked with a normal gait and was able to perform the normal range of movements with her upper and lower extremities. Tr. 873, 675-76. Notably, Plaintiff appeared to be pain free. Tr. 675. The following month, Plaintiff again exhibited normal gait and posture, and full range of motion of the cervical spine. Tr. 873, 621. Thus, the ALJ properly considered and evaluated the opinion evidence, as well as the medical and non-medical evidence of record as a whole to reach an RFC finding supported by substantial evidence.

19

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 19) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE